## SEALED POWER CORPORATION v. KAVANAGH, Collector of Internal Revenue.

### No. 6955.

United States District Court
E. D. Michigan, E. D.

Dec. 23, 1948.

Halfpenny & Hahn, of Chicago, Ill., and Raymond J. Kelly, of Detroit Mich., for plaintiff.

Thomas P. Thornton, U. S. Atty., and Roger P. O'Connor, Asst. U. S. Atty., both of Detroit, Mich., Theron Lamar Caudle, Asst. Atty. Gen., and Andrew D. Sharpe and Herbert S. Fessenden, Sp. Assts. to Atty. Gen., for defendant.

LEDERLE, Chief Judge.

### Findings of Fact.

1. This is an action by which plaintiff-taxpayer, a Michigan corporation, seeks to recover some $12,000 assessed by and paid to defendant, the Collector of Internal Revenue for this District, as manufacturer's excise taxes on the sale of piston pins and lock washers, manufactured by third parties, with pistons of plaintiff's own manufacture, sold by plaintiff during the period from October 1, 1941, to November 30, 1945. It is conceded that plaintiff's claim for refund and this action were filed within the times limited therefor. The manufacturer's excise tax in question was assessed under 26 U.S.C.A. §§ 3403 (c) and 3442, which, generally, provide for payment of such tax on the sale of an automobile part or accessory by the manufacturer or producer thereof unless such ar-

ticle forms a component part of another taxable article, in which instance the tax is paid by the manufacturer or producer of the second article. The Government made the deficiency assessment in question on the theory that plaintiff's packing and sale of piston pins and lock washers together with pistons constituted the manufacture of a new taxable article rather than the sale of the named separate articles on which the tax had been paid by the separate manufacturers thereof respectively. At pre-trial conferences most of the facts were agreed upon and incorporated into a formal stipulation of facts, which is hereby adopted as part of these findings. At the opening of the trial, some proposed findings were agreed upon, and these agreed findings are likewise adopted. These were supplemented by some testimony. The following brief summary of the facts appears to be all that will be necessary to indicate the basis for the determination hereof.

2. Plaintiff manufactures, packs in cardboard cartons and sells pistons as replacement parts for automobile engines, on the sale price of which pistons it pays the manufacturer's excise tax. Plaintiff also purchases manufactured lock washers and piston pins, commonly called wrist pins, from third parties who have paid the manufacturer's tax thereon, which taxes, in turn, have been passed on to plaintiff as a separate part of plaintiff's purchase price. Plaintiff does not manufacture wrist pins or lock washers. Plaintiff sells pistons separately, wrist pins separately, and lock washers separately, in each of which instances the Government concedes that all manufacturers' excise taxes were properly paid under the formula outlined in the first two sentences of this finding. Plaintiff likewise packs and sells in one carton pistons, wrist pins and lock washers, in which instances the Government contends that plaintiff thus manufactures a new taxable article, with the tax computable upon the combined price. Taxes which plaintiff paid at source on the pins and washers were credited to plaintiff in computing the deficiency assessment. Mathematically, the disagreement between the parties is whether or not the plaintiff's mark-up between cost and selling price on wrist pins and lock washers, bought tax-paid from other manufacturers, is subject to a manufacturer's tax when plaintiff sells them with pistons manufactured by plaintiff, on which plaintiff pays the tax, when, concededly, such mark-up on wrist pins and lock washers is not taxable to plaintiff when plaintiff sells the wrist pins and lock washers separately from the pistons.

3. An assembly of parts capable of movement up and down the piston cylinder in engagement with and transmitting to the crankshaft the energy generated in an automobile cylinder consists of the following articles:

(a) One piston.

This is a metal tubular shaped body, open at the lower end and closed on the top, or firing, end, containing two smoothly finished round holes about midway between top and bottom, known as wrist pin bosses, to permit the insertion and connection of the piston rod by means of the wrist pin, each end of which pin rests in a wrist pin boss at each side of the circular end of the piston rod which encircles the pin. The exterior of the piston contains a series of rectangular shaped grooves, accurately machined so as to receive piston rings. A number of holes or slots are usually drilled through one or two of these grooves as passages for lubricating oil.

(b) Three or four piston rings.

The number of these rings depends upon the number of ring indentations provided on the outside of the piston. These are packing rings of spring metal, which fit around the piston in the indented rings and which control compression and lubrication.

(c) One piston rod.

This is a rigid metal rod, having a large ring bearing at the lower end, known as the crank shaft bearing, with a separate cap forming the lower half of this ring bearing, which cap is bolted onto the upper half of this bearing after the bearing has been placed around the crankshaft. This rod also has a small one-piece ring

bearing at the other end, known as the wrist pin bearing, which encircles the wrist pin between and in alignment with circular wrist pin bosses formed on the two opposite sides of the piston.

(d) One wrist pin.

This is a hollow metal cylinder, ground and polished to a certain size, and case-hardened. Its case-hardening by the manufacturer does not permit plaintiff to make any change in size or form by grinding or otherwise. It is encircled by the wrist pin bearing of the piston rod, with each end resting in a wrist pin boss, being held from movement out of the piston by a lock washer placed in a groove inside the wrist pin boss near its outside edge. The tolerance in dimensions of a wrist pin is measured in tenths of thousandths of an inch, the degree of tolerance depending on type and construction of piston.

(e) The two lock washers.

These are spring metal washers designed to snap into the grooves of the wrist pin bosses as described above.

4. The Government contends that the selection by proper dimension, packing and sale together of the articles in categories (a), (d) and (e), piston, wrist pin and lock washers, constitute the manufacture and production of a new taxable article. Plaintiff contends that this is merely the sale together of four separate articles of three types chosen by proper dimensions to be operable in engagement with other parts.

5. Plaintiff uses the same type and size of paper carton when packaging pistons alone as when wrist pins and washers are included, the contents being designated by a label bearing a part number and those cartons which also contain the wrist pins and washers bearing the letter "P" following the part number. In packaging wrist pins, pistons and lock washers together for sale, plaintiff fits the pin by proper size for the piston being packed, and places the pin inside the piston through the wrist pin bosses for shipping. To assemble such a piston with the piston rod, the wrist pin has to be withdrawn for passing through the wrist pin bearing of the piston rod, which rod must be inserted between and in alignment with the wrist pin bosses on the interior of the piston. However, it is conceded that if the assembled piston, wrist pin and two lock washers constitute one article, the sale together of the piston, wrist pin and washers would be taxable whether or not plaintiff inserted the pin into the pin bosses for shipping under Treasury Regulation 46, Sec. 316.4, which defines the sale of a taxable article in knockdown condition but complete as to all component parts as within the statutory taxable "manufacture or production."

6. The plaintiff manufactures pistons from iron or aluminum castings to the finished or semi-finished shell-like cylinders, containing grooves on the outside in which piston rings are to be inserted, both ring grooves and wrist pin holes being made to accommodate rings and pins of specified dimensions.

7. Pistons, piston rings, piston rods and wrist pins are at times purchased separately by engine repairmen, who assemble them. In such cases, all parts must be of exact design and dimension so as to function in the assembly.

8. A piston, a wrist pin and two lock washers cannot form one part or accessory for an automobile. They are four separate articles, capable of assembly with other parts for use in automobiles. Plaintiff's packaging and sale together of one piston, one wrist pin and two lock washers of proper size and dimensions to be operable when assembled into combination with other automobile parts, does not actually make a taxable article, does not change the form of the articles in question and does not produce an article by the combination or assembly of two or more articles, nor could these four articles be combined or assembled into one article. It is merely the packaging and sale together of four separate articles of proper dimension for intended use, the identity or form of none of which has been altered or changed, nor could they be altered or changed, by any assembly together of these four articles.

9. Prior to plaintiff's purchase of wrist pins and lock washers from third party

462

manufacturers, such wrist pins and lock washers had reached such a stage of manufacture that they were commonly and commercially known as distinct automobile parts. Plaintiff sold such wrist pins and lock washers in the same stage of manufacture as when purchased by plaintiff.

10. Plaintiff's pistons had reached the same stage of manufacture whether plaintiff sold them separately or together with wrist pins and lock washers. At the time of sale of such a piston by plaintiff, it has reached such a stage of manufacture that it is commonly and commercially known as a distinct automobile part.

11. The piston, wrist pin and two lock washers sold by plaintiff were not capable of assembly or combination together into one commonly or commercially known automobile part or accessory.

### Conclusions of Law.

1. This is a suit for recovery of manufacturer's excise taxes paid by plaintiff to defendant Collector, and, as such, is an action arising under a law providing for internal revenue, over which this court has jurisdiction. 28 U.S.C.A. § 41 (5), carried into the 1948 Revision of the Judicial Code as 28 U.S.C.A. § 1340.

2. As it applies to this case, the manufacturer's excise tax is imposed on the sale of an automobile part or accessory by the manufacturer or producer thereof unless such article forms a component part of another taxable article, in which instance this manufacturer's tax is payable only by the manufacturer or producer of the second article. 26 U.S.C.A. §§ 3403 (c) and 3442.

3. Under authority of 26 U.S.C.A. § 3450 this manufacturer's excise tax statute was implemented by Treasury Regulation 46, Sec. 316.4, which defines a manufacturer or producer as one "who produces *a taxable article* * * * (1) by processing, manipulating, or changing the form of an article, or (2) by combining or assembling two or more articles," and provides that, " a manufacturer who sells *a taxable article* in a knockdown condition, but complete as to all component parts, is liable for the tax, and not the person who buys and assembles *a taxable article* from such component parts." (Italics added.)

4. A companion Regulation defines the term "parts and accessories" as embracing "all such articles as have reached such a stage of manufacture that they are commonly or commercially known as parts and accessories whether or not fitting operations are required in connection with installation." Treasury Regulation 46, Sec. 316.55; 26 U.S.C.A. § 3450.

5. Where, as here, a taxpayer packs and sells together, by proper size and dimension, four separate automobile parts —a piston, a wrist pin and two lock washers —each of which prior to such packing has reached such a stage of manufacture that it is commonly and commercially known as a distinct automobile part, which four articles of themselves are not capable of assembly or combination into one commonly known or commercially known automobile part or accessory, where such taxpayer does not thereby actually make a new taxable article, does not change the form of any of the articles in question and does not produce an article by the combination or assembly of two or more articles, and where such sale is not of a taxable article in knockdown condition but complete as to all component parts, the taxpayer is not liable for the manufacturer's excise tax on the combined sale price. Under such circumstances, the tax is payable by the separate manufacturers of the separate articles respectively.

6. Accordingly, judgment will be entered in favor of plaintiff and against defendant, allowing the refund claimed by plaintiff.